```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION


GEORGE RIECK,                  §
TDCJ-CID #10127367,            §
                               §
          Plaintiff,           §
                               §
v.                             §   CIVIL ACTION NO. H-04-3276
                               §
CARLOS TREVIZO,                §
                               §
          Defendant.           §
```

**MEMORANDUM OPINION AND ORDER**

George Rieck, currently an inmate of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ), proceeding *pro se*, filed this civil rights complaint under <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 91 S. Ct. 1999 (1971), against United States Deputy Marshal Carlos Trevizo for retaliation and failure to protect.[1] (Docket Entry Nos. 1, 10) Defendant Trevizo has filed a Motion to Dismiss, and/or Alternatively, Motion for Summary Judgment. (Docket Entry No. 37) Rieck has filed a response. (Docket Entry No. 40) After considering the pleadings, motion, response, summary judgment evidence, and the applicable law, the court will grant summary judgment and dismiss this case for the reasons discussed below.

---

[1] The court previously dismissed Rieck's claims against Karnes County Correctional Center and Brooks County Detention Center, his challenges to the legality of his incarceration and parole revocation, and his claims for conspiracy to retaliate. (Docket Entry No. 28)

## I. Background and Claims

On January 2, 2004, Rieck, then an inmate of TDCJ, was placed in custody of the U.S. Marshal's Service and transferred to Karnes County Correctional Center in Karnes County, Texas, on pending federal charges. (Trevizo's Motion to Dismiss, and/or Alternatively, Motion for Summary Judgment, Docket Entry No. 37, Exhibit 1)  Rieck remained at the Karnes County facility from January 6, 2004, to February 11, 2004.  On February 11, 2004, Rieck spoke with U.S. Marshal Charlotta Allen at the Karnes County facility, and voiced complaints about his court-appointed attorney and the federal district judge.  (Id., Exhibit 4.)  According to Allen, Rieck stated that he "would not be responsible for anything if he physically hit his court appointed counsel." (Id.)  Rieck attempted to give Allen some paperwork regarding his complaints and grievances with the Karnes County facility, but she declined and told him to file it with the facility, not the U.S. Marshal's Service.  (Id.)

Rieck then complained to Trevizo that he did not have full time access to the law library, that he disliked the facility's food, that he did not like being searched by the marshals, and that the Karnes County facility guards were "messing" with him.  (Id., Exhibit 3.)  Rieck again spoke of assaulting his attorney. According to Trevizo, Rieck stated that he did not feel safe at the Karnes County facility and wanted a transfer.  Trevizo informed Rieck that he would be transferred that same day.  (Id.)

Rieck was then returned to his cell by U.S. Marshal Rodney Cox. Cox states in his declaration that as he was leaving Rieck's cell, he overheard Rieck tell another inmate, "I bet if I started a riot in here, things would get done." (Id., Exhibit 5.) Advised of these words, Trevizo ordered Rieck to be placed in a single cell for security and safety reasons. (Id.) Trevizo then arranged for Rieck's transfer to the Brooks County Detention Center.

According to Major Javier Aleman, Chief of Security at the Brooks County Detention Center, Rieck was uncooperative with jail personnel during his booking process at the facility. Because of Rieck's behavior, and out of concern for prison security and inmate safety, Aleman temporarily placed Rieck in a single cell for observation to determine whether he was a security risk. (Id., Exhibit 6.) After ten days officials determined that Rieck was no longer a security threat and placed him in the general inmate population. (Id.)

Rieck claims that on February 23, 2004, he was physically attacked at the Brooks County facility by a Mexican Mafia gang member named Daniel and two other inmates. Rieck alleges that he sustained three broken ribs in the altercation. Aleman testified that on that date Rieck told him he did not want to return to his assigned housing because he had been assaulted by another inmate for leaving his bar of soap in the shower. Rieck allegedly refused

to disclose any further information without consulting his attorney and was sent to the medical ward for observation.  (Id.)

On February 27, 2004, Rieck attended a hearing on his pending federal criminal charges.  He informed the district court of the assault and complained that he did not feel safe at the Brooks County facility.  The federal court ordered Rieck transferred that day to Nueces County Jail and placed in a safe cell.  (Id., Exhibit 3.)

Rieck claims that Trevizo organized the inmate attack and that the transfer to Brooks County, solitary confinement, and inmate assault were arranged by Trevizo in retaliation for the complaints and grievances Rieck filed at the Karnes County facility.  Rieck seeks monetary damages from Trevizo for retaliation and failure to protect.  Trevizo argues that Rieck failed to exhaust his administrative remedies before filing suit and that his claims fail as a matter of law.

## II.  Summary Judgment Standard of Review

In deciding a motion for summary judgment the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Once the movant presents a properly supported motion for summary judgment, the burden shifts

to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. Hamilton v. Seque Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000). All evidence must be construed "in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on conclusory allegations or unsubstantiated assertions to establish that there is a triable issue. Wallace v. Texas Tech University, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where only a scintilla of evidence has been brought forth. Fiesel v. Cherry, 294 F.3d 664, 667 (5th Cir. 2002); Spectators' Communication Network Inc. v. Colonial Country Club, 253 F.3d 215, 219 (5th Cir. 2001). This standard of review will be applied to the pending motion for summary judgment.

### III.  Failure to Exhaust

Under 42 U.S.C. § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Although exhaustion under section 1997(e)(a) is not jurisdictional, Underwood v. Wilson, 151 F.3d 292, 293-95 (5th Cir. 1998), it is mandatory. Porter v. Nussle,

122 S. Ct. 983, 992 (2002). Even when an inmate seeks relief not available in grievance proceedings, notably monetary damages, exhaustion is a prerequisite to suit. Booth v. Churner, 121 S. Ct. 1819 (2001). Federal prisoners suing under Bivens must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes before instituting a § 1983 suit. Porter, 122 S. Ct. at 988.

The Fifth Circuit has adopted a strict approach to the exhaustion requirement. See Ferrington v. La. Dep't of Corrections, 315 F.3d 529, 532 (5th Cir. 2002) (finding that blindness did not excuse the plaintiff from exhausting administrative remedies); Richardson v. Spurlock, 260 F.3d 495, 499 (5th Cir. 2001) (affirming dismissal for failure to exhaust because the inmate incorrectly filed an administrative appeal rather than a disciplinary appeal).

Administrative remedies may be deemed unavailable where (1) an inmate is unable to file a grievance because of physical injury, and (2) the inmate attempts to exhaust administrative remedies by filing a grievance as soon as the injury improves, but the grievance is rejected as untimely. Days v. Johnson, 322 F.3d 863, 868 (5th Cir. 2003).

Rieck admits that he failed to exhaust his administrative remedies before filing suit. As justification for the failure, Rieck asserts that because Daniel assaulted him for filing

-6-

grievances, exhausting his administrative remedies "would only cause Carlos Trevizo to inflict more severe harm to [Rieck]. [Rieck's] life is in danger if he files any more grievances through the proper channels per Carlos Trevizo." (Rieck's Response to the Government's Answer, Docket Entry No. 40, p. 5) Rieck asserts that the exhaustion doctrine does not require a party to pursue inadequate or futile remedies, and that if he filed more grievances, he would "be killed by Carlos Trevizo's employee Daniel," and the Mexican Mafia gang members. (Id. at p. 10, Exhibit A, p. 5.) However, even assuming these conclusory allegations were supported in the record, Daniel was an inmate at the Brooks County facility, and Rieck was transferred from that facility to the Nueces County Jail on February 27, 2004. Rieck failed to pursue his administrative remedies after leaving the Brooks County facility and failed to pursue administrative procedures before filing this lawsuit. He has therefore failed to exhaust his administrative remedies. See Days, 322 F.3d at 868.

When a prisoner fails to exhaust his administrative remedies before filing suit, without a valid excuse, the defendant is entitled to judgment as a matter of law dismissing the prisoner's complaint, but the dismissal must be without prejudice to refiling after exhausting his administrative remedies. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998). In the instant action the court will grant summary judgment on the merits on all of Rieck's claims

except as to his retaliatory transfer claim. Accordingly, this action will be dismissed without prejudice as to the retaliatory transfer claim and with prejudice as to all other claims.

### IV.  Claims for Failure to Protect

Rieck claims that Trevizo violated his civil rights by failing to protect him from the inmate assault at the Brooks County facility on February 23, 2004. As to the claims against Trevizo in his individual capacity, the Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 114 S. Ct. 1970, 1976-77 (1994); see also Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995) ("Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners."). Not every injury caused by one inmate to another, however, rises to the level of constitutional liability for prison officials responsible for inmate safety. To establish a claim for failure to protect, an inmate must show that he was incarcerated under conditions that posed a substantial risk of serious harm to his safety and that defendants were deliberately indifferent to his need for protection. Farmer, 114 S. Ct. at 1976-77; Horton, 70 F.3d at 401.

A prison official is not liable under a failure-to-protect claim if he (1) was unaware of even an obvious risk to inmate safety; (2) did not know of the underlying facts indicating a sufficiently substantial danger; (3) knew of the underlying facts but believed (albeit unsoundly) that the risk was insubstantial or nonexistent; or (4) knew of a substantial risk to inmate safety and responded in a reasonable manner to the danger, even if harm was ultimately not avoided.  Farmer, 114 S. Ct. at 1976-77.  A prison official knows of an excessive risk only if (1) he is aware of facts from which he could infer that a substantial risk of serious harm exists, and (2) he in fact draws the inference.  Id.  In other words, to be deliberately indifferent a prison official must be subjectively aware of the risk.  This subjective standard has caused at least one court to acknowledge that "deliberate indifference" is an extremely high standard to meet.  Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

The Eighth Amendment mandates "reasonable safety," not "absolute safety," and prison officials are not liable when they make good faith errors in assessing potential danger.  See Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998).  There must be some evidence that the plaintiff was injured as a result of being exposed to a danger of which the defendants were aware and yet ignored.  Horton, 70 F.3d at 400-01.  Mere negligence is

insufficient to support an Eighth Amendment claim. <u>Eason v. Thaler</u>, 73 F.3d 1322 (5th Cir. 1996).

In support of his Eighth Amendment claim for Trevizo's deliberate indifference to his safety, Rieck states as follows:

> [On February 23, 2004], Daniel and two other Mexican Mafia gang members cornered me in the showers and jumped me from behind. [Three of my ribs were broken.] At that point, Daniel informed me that if I said anything or filed any more grievances or complaints I would be 'Dead' within 24 hours.
>
> Daniel informed me at that time that the guards would be paid to turn their backs and that there was nothing I could do to save my own life.
>
> Daniel having the tattoo of Mexican Mafia [across] his back is a main member of this gang from Mexico. Daniel's background proves that the only safe place for him concerning other inmates [safety] due to his violent acts is for him to be in solitary confinement.
>
> Daniel also inform[ed] me in the shower area that he was released from solitary confinement to take care of me [for] filing grievances and complaints, by the police.

(Docket Entry No. 40, Exhibits A and B, Statements of George Rieck)

This statement presents no probative summary judgment evidence that Trevizo knew on February 23, 2004, that Daniel and the other two inmates presented a safety risk to Rieck, or, that if he knew of a risk, he intentionally disregarded the risk. That Rieck was assaulted by Daniel and the two inmates does not, standing alone, establish a failure-to-protect claim against Trevizo. Rieck does not show that Trevizo knew Daniel would be released from solitary confinement, or that Trevizo was deliberately indifferent to any safety risk Daniel presented to Rieck. In short, Rieck fails to

demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm, or that Trevizo's state of mind was one of deliberate indifference to Rieck's safety.

A careful and thorough review of the summary judgment evidence reveals no probative evidence that Trevizo was deliberately indifferent to a serious safety risk to Rieck regarding inmate Daniel on February 23, 2004.  Rieck's assertions of Trevizo's deliberate indifference regarding the attack are conclusory and unsupported by probative summary judgment evidence.  In the absence of probative summary judgment evidence raising a genuine issue of material fact as to Trevizo's deliberate indifference to Rieck's safety on February 23, 2004, Trevizo will be granted summary judgment on Rieck's failure-to-protect claims.

### V.  **Claims for Retaliation**

Rieck claims that Trevizo retaliated against him for filing grievances and complaints by (a) transferring him from Karnes County Correctional Center to Brooks County Detention Center, (b) placing him in solitary confinement without a hearing or due process, and (c) arranging the inmate attack of February 23, 2004.

To state a claim of retaliation an inmate must allege (1) specific constitutional rights, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation.  Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003).  To state a claim of

retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident would not have occurred. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Retaliatory motive must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson v. Rodriquez, 110 F.3d 299, 310 (5th Cir. 1997). Mere conclusory allegations are insufficient to state a claim for retaliation.

**A.   The Inmate Attack**

As discussed above, the court has reviewed the summary judgment evidence and finds no probative evidence supporting Rieck's allegations that Trevizo arranged for Daniel and the other two inmates to attack him. Rieck fails to present probative evidence of either a retaliatory act or intent by Trevizo, or causation. His claims for retaliation based on the alleged inmate attack will be dismissed.

**B.   The Transfer**

In his declaration Trevizo states that Rieck was transferred from the Karnes County facility to the Brooks County facility

because Rieck told him he felt unsafe at the Karnes County facility. (Docket Entry No. 37, Exhibit 3) Rieck, on the other hand, alleges that "at no time did I ever [talk] to Carlos Trevizo. Carlos Trevizo did on 2-11-04 pull me from a cell and yell, scre[a]m and curse me for filing the grievances and affidavit of complaint with his office[r], 'Carlotta Allen.'" Rieck asserts that Trevizo told him he was being transferred to the Brooks County facility because of the grievances and complaints he made. (Docket Entry No. 40, Exhibits A and B, Statements of George Rieck)

Summary judgment cannot be granted on the merits of Rieck's retaliatory transfer claim. However, because Rieck failed to exhaust his administrative remedies prior to filing suit, this claim will be dismissed without prejudice.

**C.    Solitary Confinement**

Rieck complains that when he arrived at the Brooks County facility, Trevizo arranged for his illegal placement in solitary confinement for nine days. He further alleges that during proceedings in his federal criminal case, <u>United States of America v. George Rieck</u>, Cause No. C-03-0375, in the United States District Court for the Southern District of Texas, Corpus Christi Division, the Honorable Hayden W. Head, Jr. told Rieck that Trevizo had no authority to place him in solitary confinement, and that Trevizo was ordered to immediately release Rieck to the general population.

-13-

This court's review of the public docket records for Cause No. C-03-0375 fails to reveal any support for Rieck's allegations. Moreover, Major Aleman, Chief of Security for Brooks County Detention Center (BCDC), states in his declaration as follows:

> On February 11, 2004, Supervisor Deputy U.S. Marshal Carlos Trevizo ('Marshal Trevizo') informed BCDC that a USMS service contract guard reported that he had heard Rieck make threats that he planned to start a riot at the BCDC because he was upset about being transferred to the facility. In addition, Rieck was uncooperative with BCDC jail personnel during his initial booking process. Based upon this information and out of concern for prison security and prisoner safety, I made an administrative decision to place Rieck in a single prisoner cell to observe him for a few days to determine whether he was [a] security risk.
>
> Marshal Trevizo's input, if any, had no influence or involvement with the decision by BCDC to place Rieck in a single cell. Rieck was housed in a single cell for 10 days. Once BCDC administration determined that Rieck was no longer a security threat, he was transferred to a prison cell in which he would be housed with other inmates, as is the custom and practice of BCDC.
>
> After completing his time in Separation, Rieck was housed in General Population.

(Docket Entry No. 37, Exhibit 6)

Rieck's claim of retaliatory solitary confinement is conclusory, and he presents no probative summary judgment evidence in support of his claim. In the absence of probative summary judgment evidence raising a genuine issue of material fact as to alleged retaliation by Trevizo, Rieck fails to meet his burden of proof. Rieck's claim for retaliatory solitary confinement will be dismissed with prejudice.

## VI.  Conclusion and Order

Based on the foregoing, the court **ORDERS** the following:

1. Trevizo's Motion for Summary Judgment (Docket Entry No. 37) is **DENIED** as to the claim for retaliatory transfer, and **GRANTED** as to all other claims.

2. Any and all other pending motions are **DENIED**.

3. The claim for retaliatory transfer is **DISMISSED without prejudice**.

4. All other claims are **DISMISSED with prejudice**.

The Clerk will provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 13th day of October, 2005.

                                    SIM LAKE
                        UNITED STATES DISTRICT JUDGE